*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1651**

State of Minnesota,
Respondent,

vs.

Eric Jason Yankovec,
Appellant.

**Filed November 7, 2016
Reversed and remanded
Stauber, Judge**

Hennepin County District Court
File No. 27-CR-13-36992

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Jesson, Presiding Judge; Stauber, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**STAUBER**, Judge

Appellant, who was convicted of three firearm offenses following the search of his storage unit, argues that the warrant authorizing the search was issued without probable

cause.  Because the contents of the warrant application did not establish a sufficient nexus between earlier criminal activity involving appellant at another location and appellant's storage unit, the warrant to search the storage unit was issued without probable cause.  We therefore reverse and remand.

**FACTS**

In late October 2013, Richfield police detective Bill Stanger received a tip from a confidential informant (CI) that appellant Eric Jason Yankovec was "dealing large amounts of Methamphetamines from his girlfriend's apartment" in Maple Plain.  The CI provided descriptions of Yankovec and his girlfriend, D.R., and their vehicles; the police verified this information.  After investigating and discovering that both Yankovec[1] and D.R. had lengthy criminal histories, Stanger and another officer went to D.R.'s apartment with a certified drug-detection dog.  The front door of the apartment building was unsecured, and each apartment opened to a common hallway.  The drug-detection dog walked past several of the apartments but alerted only at D.R.'s apartment, #301.

Based on this and other supporting information that included Stanger's law-enforcement experience, Stanger applied for a warrant to search D.R.'s apartment, which the district court issued.  During the November 5, 2013 search, Richfield police discovered substances that field-tested positive for narcotics and information that Yankovec was renting a storage unit in Bloomington, which police also verified.

---

[1] The Stanger affidavit states that Yankovec was "arrested numerous times for various offenses including:  Theft, Forgery, Burglary, Criminal Damage to Property, 5th Degree Drugs, 3rd Degree Drugs and Prohibited Person in Possession of a Firearm."

Reasoning that "it is common for drug dealers to store their drugs and/or illegal items in storage units to avoid police detection" and that "people who are involved in the distributions of narcotics often times use firearms to protect their narcotics and proceeds derived from the sale of narcotics," Stanger quickly sought a second warrant on November 5 to authorize the search of the storage unit, which the district court again issued. The search of the storage unit yielded a handgun, two BB guns, and ammunition for the BB guns.

Because Yankovec is a convicted felon, he was charged with three counts of being a prohibited person in possession of a firearm in violation of Minn. Stat. § 624.713, subds. 1(2), 2(b) (2012). Yankovec moved pretrial to suppress the evidence obtained during the search of the storage unit, arguing that use of the drug-detection dog in the common hallway of the apartment was an unlawful search. The district court denied the motion, ruling that Yankovec failed to meet his burden to prove that the common area of the apartment building would be subject to Fourth Amendment privacy protections and that police had reasonable, articulable suspicion of criminal activity to permit the dog to sniff for narcotics.[2] The district court also ruled that the warrant for the second search was supported by probable cause. Following a jury trial, Yankovec was convicted of the three charged firearm offenses, and the district court imposed a 60-month sentence as required by law.

---

[2] Yankovec does not challenge on appeal the use of the drug-detection dog.

3

Yankovic appeals, arguing that his convictions should be reversed because probable cause was lacking to support the issuance of the second search warrant authorizing the search of his storage unit.

## D E C I S I O N

Yankovec argues that his convictions should be reversed because the district court erroneously concluded that the second warrant authorizing the search of his storage unit was supported by probable cause. The Fourth Amendment of the United States Constitution and article I, section 10 of the Minnesota Constitution protects individuals from unreasonable searches and seizures. U.S. Const. amend IV; Minn. Const. art. I, § 10. "When examining whether a search was supported by probable cause, the ultimate question is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Carter*, 697 N.W.2d 199, 204-05 (Minn. 2005) (quotation omitted).

In reviewing a determination of probable cause to support a search warrant, an appellate court reviews the totality of the circumstances, but may examine only the information presented in the supporting affidavit to determine "whether there were specific facts to establish a direct connection between the alleged criminal activity and the site to be searched." *Id*. at 205 (quotation omitted). The appellate court's "only consideration is whether the judge issuing the warrant had a substantial basis for concluding that probable cause existed." *State v. Jenkins*, 782 N.W.2d 211, 222-23 (Minn. 2010).

As recounted by Detective Stanger in the second search-warrant application, during the execution of the first search warrant at the apartment, police discovered three types of suspected narcotics, documents referring to a "CO2 powered air gun," and rental documents showing that Yankovec was renting a storage unit in Bloomington. After the apartment search, Stanger and assisting officers confirmed that Yankovec was renting the storage unit, and Stanger directed the other officers to keep the storage unit under observation while he sought the second warrant. Based on Stanger's training and experience, he believed that the following items could be found in the storage unit: cell phones and other communications devices and information, narcotics packaging equipment, firearms, cash, and price lists and other financial information about sales of narcotics.

Yankovec argues that this information was legally insufficient to establish probable cause to issue a search warrant, relying primarily on *Carter* and *State v. Kahn*, 555 N.W.2d 15 (Minn. App. 1996). In *Carter*, the supreme court found that there was not probable cause to issue a search warrant when the supporting affidavit alleged only that a drug-detection dog alerted at a storage unit belonging to a defendant whose name was recognized by police from a different narcotics investigation, and police had information that the defendant had been visiting the storage unit once or twice daily. 697 N.W.2d at 203. The supreme court held that "the results of the dog sniff, appellant's criminal record, and his alleged frequent visits to the storage facility" did not provide a substantial basis to conclude that there was a "fair probability" that contraband could be found in the storage locker because there was not a "direct connection between the

factors [supporting a finding of probable cause] and the site to be searched." *Id.* at 205-06 (quotations omitted).

In *Kahn*, this court ruled that a search warrant was issued without probable cause when the defendant was arrested for possession of one ounce of cocaine in Minneapolis and the warrant affiant sought to search his home, which was located 75 to 85 miles away. 555 N.W.2d at 18. On those facts, this court concluded that there was an insufficient nexus "to link [the defendant's] possession of one ounce of cocaine in Minneapolis to possible evidence or contraband at his residence." *Id.* In *Kahn*, this court also rejected the notion that the "nexus" between criminal activity and the place to be searched could be provided "merely on the basis of affiant-officers' experience." *Id.*

We conclude that this case is controlled by *Carter* and *Kahn*. The totality of the circumstances do not establish a fair probability that firearms could be found in Yankovec's storage unit. Those circumstances include: (1) a tip that Yankovec was dealing drugs out of his girlfriend's apartment; (2) items found during execution of a search warrant at the girlfriend's apartment that included narcotics, documents showing the existence of a firearm, and documents showing that Yankovec had rented a storage unit; and (3) the search-warrant affiant's expressed belief, based on his experience, that drugs or firearms could be found in the storage unit. Because we reverse Yankovec's convictions, we do not reach other issues raised by appellant.[3]

---

[3] We note that during the pendency of this appeal, the Minnesota Supreme Court decided *State v. Haywood*, ___ N.W.2d ___, ___ , No. A14-1792, slip op. at 9 (Minn. Oct. 19, 2016), in which the court held that an air-powered BB gun does not constitute a firearm within the meaning of Minn. Stat. § 609.165 (2014).

6

**Reversed and remanded**.